**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AARON BURNETTE, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Plaintiff, | ) | CASE NO.: 5:22-CV-02342 |
| | ) | |
| vs. | ) | **ORDER AND DECISION** |
| | ) | **(Resolving Doc. 105, 122, 126, 127)** |
| CITY OF NORTON, et. al, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Pending before this Court are Defendants' Kevin Starling ("Starling"), and Ryan Connell's ("Connell") motion for summary judgment. Doc, 105. Plaintiff Aaron Burnette has filed his opposition (doc. 109), and Starling and Connell have replied (docs. 112). For the reasons set forth below, Defendants' motion for summary judgment is GRANTED and this matter is DISMISSED. Further, Plaintiff's motion for leave to file supplemental discovery (doc. 122) is DENIED, and his remaining motions (doc. 126, 127) are DENIED as MOOT.

I.  **STATEMENT OF FACTS**

In May of 2019, the Norton Police Department began investigating Plaintiff for alleged inappropriate behavior toward minors. Doc. 25, ¶15. Detectives Starling and Connell were assigned to the case. Doc. 25, ¶16. This investigation was subsequently closed because the allegations could not be substantiated. Doc. 25, ¶17. However, Starling and Connell continued to

1

investigate Plaintiff regarding his interactions with the minors, noting that Plaintiff was "creating friendships with young girls not typical or appropriate to their ages and stations in life." Doc. 25, ¶18. In the Summer of 2020, a minor, A.B., allegedly stated that she was uncomfortable around Plaintiff because he was "always touching her thighs" and picking her up. Doc. 25, ¶19. Starling subsequently contacted and met with A.B.'s parents. Doc. 25, ¶21. On July 31, 2020, A.B. made a report at the Norton Police Department that Plaintiff had touched her thighs and made her uncomfortable. Doc. 25, ¶24.

A.B.'s mother subsequently made an appointment for A.B. at the Akron Children's Hospital's CARE Center. Doc. 25, ¶25. At this appointment, A.B. told the nurse that Plaintiff touched her inappropriately multiple times. Doc. 25, ¶35.

On February 5, 2021, Plaintiff was indicted on two counts of gross sexual imposition by the Summit County Grand Jury. Doc. 25, ¶36. On February 10, 2021, Plaintiff turned himself in at the Barberton Municipal Courthouse and was transferred to the Summit County Jail and detained in solitary confinement until his bond hearing on February 17, 2021. Doc. 25, ¶36. The matter proceeded to trial, and on April 21, 2022, A.B. testified and recanted her prior statements. Doc. 25, ¶42. Plaintiff was subsequently acquitted on all charges. Doc. 25, ¶42.

On November 21, 2022, Plaintiff filed the instant complaint in state court. Doc. 1-1. On December 31, 2022 this matter was removed to this Court. Doc. 1. On May 12, 2023, Plaintiff filed his amended complaint, asserting various constitutional violations under 42 U.S.C. §1983 and for malicious prosecution under state law. After resolving various motions for judgment on the pleadings, only Counts One and Five (malicious prosecution against state and federal law) against Starling and Connell remain. Doc. 40, p. 8.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. LAW AND ANALYSIS
####   A. Qualified Immunity

As an initial matter, Starling and Connell contend that they are entitled to qualified immunity because Plaintiff cannot establish that they violated a clearly established right. Doc. 105, p. 7-8.

Qualified immunity shields government officials from civil liability in the performance of their duties so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Such immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). "Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting [the] government's ability to perform its traditional functions." *Wyatt v. Cole*, 504 U.S. 158, 168 (1992).

Qualified immunity will ordinarily apply unless it is obvious that a reasonably competent official would have concluded that the actions taken were unlawful. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). The qualified immunity analysis is a two-step inquiry: (1) whether a constitutional right has been violated; and (2) whether that right was clearly established, though the steps need not be taken in that order. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Qualified immunity provides immunity not only from liability, but also from trial. Whether qualified immunity is available is a question of law. *Cook v. Cincinnati*, 103 Ohio App. 3d 80, 85 (1st Dist. 1995). Therefore, whether a public official did or did not act reasonably under

4

a specific set of facts is a matter for the court and may properly be determined by summary judgment. *Cook*, 103 Ohio App. 3d at 85. Thus, while a court must consider the facts in the light most favorable to the nonmoving plaintiff, the court – not the jury – must determine as a matter of law whether the facts show that the defendant violated clearly-established rights of which a reasonably officer would have known. *See Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988).

Moreover, even on summary judgment, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Cook*, 103 Ohio App. 3d at 85. A court must therefore grant summary judgment for the defendant if the undisputed facts, and any disputed facts viewed in the plaintiff's favor, fail to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Id*. at 86.

Plaintiff contends that Starling and Connell detained him without probable cause and therefore violated his clearly established Fourth Amendment right to be free of malicious prosecution and seizure/detention without probable cause. Doc. 109, p. 13. Set forth below, the Court concludes that Plaintiff fails to establish that Starling and Connell violated his Fourth Amendment rights.

B. **COUNTS ONE AND FIVE- Malicious Prosecution (state and federal)**

In Count One, Plaintiff asserts that Starling and Connell deprived him of his Fourth Amendment right to be free from malicious prosecution and seizure/detention without probable cause. Doc. 25, p. 15. To establish a claim for malicious prosecution under federal law, Plaintiff must plead that "(1) that a criminal prosecution was initiated against the plaintiff and that the

5

defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty ... apart from the initial seizure; and (4) that the criminal proceeding must have been resolved in the plaintiff's favor." *Jones v. City of Elyria, Ohio*, 947 F.3d 905, 918 (6th Cir. 2020) (emphasis added), citing *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010). Under state law, Plaintiff must establish "malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Rogers v. Barbera*, 170 Ohio St. 241, 241 (1960), syllabus ¶1.

Starling and Connell contend that Plaintiff's malicious prosecution claims fail as a matter of law for two reasons: 1) the evidence establishes that Starling and Connell did not institute the prosecution at issue, and 2) there is no evidence to rebut the presumption that his indictment conclusively determined the existence of probable cause. Doc. 112.

### 1. **Initiation of Prosecution**

To establish a claim for malicious prosecution under federal law, Plaintiff must first establish that Starling and Connell initiated the prosecution and that they made, influenced, or participated in the decision to prosecute. *Jones,* 947 F.3d at 918. Under Ohio law, Plaintiff must first establish "malice in instituting or continuing the prosecution[.]" *Rogers*, 170 Ohio St. at 241. Under both Ohio and federal law, Plaintiff must first establish that Starling and Connell initiated the prosecution. Starling and Connell contend that there is no evidence that they instituted the prosecution at issue, but rather that it was the decision of Special Prosecutor Scott Salisbury. Doc. 105, p. 11, 12. Therefore, Starling and Connell contend that Plaintiff's claims fail as to the first elements.   This Court agrees.

6

"To prevail, [Plaintiff] must first show that the officers participated in or influenced the decision to criminally prosecute him. And because we construe participation in light of traditional tort causation principles, the officers must have done more than passively cooperate. Instead, [Plaintiff] must show that the officers aided in the decision to prosecute." (internal citations and quotations omitted) *Novak v. City of Parma*, 33 F.4th 296, 307 (6th Cir. 2022).

The evidence here establishes that Special Prosecutor Salisbury independently made the decision to prosecute. "A prosecutor's independent charging decision typically breaks the causal chain for malicious-prosecution purposes." *Novak*, F.4th at 305. Starling states that on November 3, 2020 he emailed his investigative notes to Special Prosecutor Salisbury. Doc. 105-1, ¶21; Doc. 109-2, p. 193. On January 22, 2021, Salisbury informed Starling that he had reviewed the Care Center video interview of A.B. and that he determined the case should go forward. Doc. 105-1, ¶22: Doc. 109-2, p. 193. The case was presented to the Grand Jury on February 5, 2021. Doc. 105-1, ¶23.

Connell declared that he was not in charge of the investigation, never spoke to Special Prosecutor Salisbury, did not testify before the grand jury, and did not make or sign any charges against Plaintiff. Doc. 105-2, ¶¶3, 5, 6. "In sum, I had no involvement whatsoever in Mr. Burnette's prosecution." Doc. 105-2, ¶6.

Special Prosecutor Salisbury confirms that he independently made the decision to prosecute Plaintiff. Doc. 107-1. "In January of 2021, I personally reviewed the Akron Children's Hospital Care Center video and found that the minor child victim, A.B., was credible." Doc. 107-1, ¶5. "In deciding to present the case against Aaron Burnette to the Summit County Grand Jury, I relied directly upon the Care Center Video and Report which I personally reviewed. The Care

7

Center interview provided the details of the allegations of child victim A.B. against Burnette." Doc. 107-1, ¶8. "Detective Starling did not make, influence, or participate my decision to present the Aaron Burnette case to the Grand Jury. Rather, in deciding to proceed with the prosecution Burnette, I utilized my 32+ years of experience as a prosecutor and exercised my independent professional legal judgment in determining that there was probable cause for the prosecution of Burnette." Doc. 107-1, ¶9. "To my knowledge, at no time did Detective Starling present me with fabricated evidence or false reports regarding the allegations of minor child A.B. And, in fact, the Care Center interview revealed more information about A.B.'s allegations than was contained in Detective Starling's police reports." Doc. 107-1, ¶10.

The evidence establishes that Special Prosecutor Salisbury independently made the decision to prosecute. Plaintiff does not address this argument in his opposition, nor does he present any evidence to establish that either Starling or Connell instituted the prosecution under either federal or state law. Plaintiff does not point to any dispute of material fact regarding this issue and therefore Starling and Connell are entitled to judgment as a matter of law.

    2.    **<u>Probable Cause</u>**

Starling and Connell assert that even if evidence showed that they instituted prosecution, Plaintiff cannot establish that there was a lack of probable cause to satisfy the second prong of his claims. "Even where an officer makes false statements that influence the decision to prosecute a plaintiff, the plaintiff's malicious-prosecution claim still fails if the charges are supported by probable cause." *Jones*, 947 F.3d at 919. Starling and Connell contend that Plaintiff cannot establish that there was a lack of probable cause because the Grand Jury returned an indictment against him, noting that "it is well-settled that the 'finding of an indictment, fair upon its face, by

8

a properly constituted grand jury, conclusively determines the existence of probable cause'". Doc. 105, p. 13, quoting *Snow v. Nelson*, 634 F. App'x 151, 157 (6th Circ. 2015); *Barnes v. Wright*, 449 F.3d 709, 716 (6th Circ. 2006). The exception to this rule is "when defendants deliberately or recklessly present false testimony to a grand jury in order to obtain an indictment." *Snow*, 634 F. App'x at 157.

Plaintiff asserts that Starling was not truthful when he testified before the Grand Jury. Doc. 109, p. 10, 16. However, Plaintiff has failed to present this Court with transcript of the Grand Jury proceedings. "Without a transcript of the grand jury proceedings, there is no evidence that defendant-appellees testified falsely or recklessly and, therefore, no evidence that undermines the presumption of probable cause created by the indictment. *See Young v. Owens*, 577 F. App'x 410, 417 (6th Cir. 2014)(affirming grant of summary judgment on malicious prosecution claim where plaintiffs alleged officers testified falsely before the grand jury but where grand jury transcript was not part of the record); *Tinney v. Richland Cnty.*, No. 1:14 CV 703, 2016 WL 397963, at *13 (N.D.Ohio Feb. 2, 2016), aff'd, 678 F. App'x 362 (6th Cir. 2017)(finding that Plaintiff's speculation as to what occurred in the grand jury legally insufficient where he did not have a transcript of proceedings)." *Snow*, 634 F. App'x at 157. Accordingly, Plaintiff has failed to set forth specific facts to establish that there is a genuine issue for trial. Starling and Connell's motion for summary judgment is GRANTED.

**IV.    CONCLUSION**

For the reasons set forth herein, Starling and Connell's motion for summary judgment is GRANTED, and this matter is DISMISSED. Plaintiff's motion for leave to supplement discovery

is DENIED.[1] Plaintiff's remaining motions[2] are DENIED as MOOT.

**IT IS SO ORDERED.**

| | |
|---|---|
| February 11, 2026 | /s/ John R. Adams |
| Date | John R. Adams |
| | U.S. District Judge |

---

[1] Briefing in this matter closed on July 8, 2025. Subsequently, Plaintiff filed multiple pro se "status reports" claiming unresolved discovery issues and matters involving being criminally charged "with four misdemeanor offenses related to A.B." Doc. 115, 116. This Court issued an order striking at least one status report for including A.B.'s full name and reminded Plaintiff that discovery was closed, and dispositive motions were pending. Doc. 117. Despite this, Plaintiff continued filing "status reports". Doc. 118. 119, 120. These reports showed an increasing obsession with the minor. In December of 2025, Plaintiff filed a motion for leave to file supplemental discovery in support of his opposition to Starling and Connell's motion for summary judgment. Doc. 122. Most concerning, Plaintiff states that he was served with an Ex-Parte Civil Stalking Order related to A.B., and that he believed that he and A.B. are biologically related. Plaintiff asked this Court, among other things, to grant him access to A.B.'s personal identity records, including birth and adoption records. Doc. 122. None of this purported "evidence" is relevant or necessary to oppose Starling and Connell's summary judgment motion. Instead, it shows an increasingly concerning pattern of using litigation and discovery as a method to gain information on A.B.. This motion is DENIED.

[2] Well after the close of summary judgment briefing, Plaintiff moved for "an Ex-Parte hearing" due to his arrest for state charges by an Ohio task force in Pennsylvania. Doc. 126. Similarly, he moved this Court to "enact supremacy clause" and order the U.S. Marshal Service to transport him from a jail in Pennsylvania to the Court for a hearing on his motion, an order to stay all of his state criminal proceedings until the civil matter before this Court is resolved, an order to release him from jail, and an order to compel the Pennsylvania police to release his vehicle and the seized evidence from inside the vehicle to him at no cost. Doc. 127. Because the Court dismisses Plaintiff's complaint, these motions are MOOT.